```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 29 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

JANE GENESI, et al.,

                      Plaintiffs,

            -v-

INTERNATIONAL PORTFOLIO, INC.,

                      Defendant.

------------------------------------------------------X

No. 12 Civ. 5462 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiffs Jane Genesi ("Genesi"), Raffaella Del Forno ("Del Forno"), and Siegfried Kovacs ("Kovacs") bring this action to recover $486,000 owed to them by Defendant International Portfolio, Inc. ("IPI") pursuant to three Letter Agreements dated October 19, 2011. For the reasons that follow, Plaintiffs' motion for summary judgment is granted.

**I.    Background**

    **A.    Facts**

The following allegations are taken from Plaintiffs' Motion for Summary Judgment in Lieu of Complaint and the affidavits and exhibits filed in support of such motion.[1] (Jane Genesi Aff., June 9, 2012; Raffaella Del Forno Aff., June 11, 2012; and Siegfried Kovacs Aff., June 10, 2012.) On or about April 14, 2010, Plaintiffs each individually entered into a Purchase & Sale Agreement (the "Original Agreements") with Defendant. Under the Original Agreements, each Plaintiff was to provide financing to Defendant for the purchase of a portfolio of health care

---

[1] In its Notice of Removal, Defendant "denies Plaintiffs' allegations" (Def. Notice of Removal, June 16, 2012), but has not addressed those allegations in any detail or offered any evidence in rebuttal. Thus, for purposes of this motion, the Court considers the facts alleged by Plaintiffs to be undisputed. <u>See</u> Fed. R. Civ. P. 56(e)(2).

debt. Defendant was obligated to repurchase the portfolios from each Plaintiff at the predetermined Repurchase Price (Purchase Price plus an additional 10% as consideration) on or before May 17, 2010. All three of the Original Agreements are identical in every respect, except for the Purchase Price and Repurchase Price, which vary by Plaintiff. In accordance with these Original Agreements, Genesi paid Defendant $150,000 and was to receive $165,000 as the Repurchase Price; Del Forno paid Defendant $200,000 and was to receive $220,000 as the Repurchase Price; and Kovacs paid Defendant $80,000 and was to receive $88,000 as the Repurchase Price. Defendant failed to pay Plaintiffs the amounts owed under the Original Agreements by May 17, 2010.

In July 2010, Defendant made payments to each Plaintiff – $60,000 to Genesi, $75,000 to Del Forno, and $19,279.58 to Kovacs – but the amounts paid did not cure its default under the Original Agreements. Accordingly, on or about June 13, 2011, each Plaintiff caused a Notice of Default to be served on Defendant. On or about October 19, 2011, each Plaintiff entered into a Letter Agreement with Defendant (collectively, the "Letter Agreements"), in which Defendant again agreed to repurchase from each Plaintiff the medical debt portfolio which was the subject of the Original Agreements and to repay each Plaintiff in three installments on fixed dates. Specifically, Defendant agreed to pay to Genesi $10,000 within two days of the agreement, $85,000 on or before November 30, 2011, and $85,000 on or before December 30, 2011. (Genesi Aff. Exh. C (Genesi Letter Agreement) at 1.) Defendant also agreed to pay Del Forno $10,000, $115,000, and $115,000, and Kovacs $10,000, $43,000, and $43,000, on the above-mentioned dates. (Del Forno Aff. Exh. C (Del Forno Letter Agreement) at 1; Kovacs Aff. Exh. C (Kovacs Letter Agreement) at 1.) Each Letter Agreement also provided that "this Letter Agreement is a stand-alone instrument and accordingly, the payments and obligations hereunder

are not contingent or dependent upon, or subject in any manner to, the provisions of any other instrument or document." (Genesi Aff. Exh. C at 3; Del Forno Aff. Exh. C at 3; Kovacs Aff. Exh. C at 3.) Defendant paid each Plaintiff the first scheduled payment of $10,000 but has not paid the remaining amounts owed to each.

B. **Procedural History**

Plaintiffs initiated this action on June 19, 2012 in New York state court by filing a Summons and Motion for Summary Judgment In Lieu of Complaint pursuant to New York Civil Practice Law and Rules § 3213. Under that section, "[w]hen an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of complaint."

The action was removed by Defendant to this Court on July 16, 2012 pursuant to 28 U.S.C. § 1446. "A federal court to which a state action is removed takes the action in the posture in which it existed when it is removed from a state court's jurisdiction and must give effect to all actions and procedures accomplished in a state court prior to removal." Istituto per lo Sviluppo Economico Dell'Italia Meridionale v. Sperti Products, Inc., 47 F.R.D. 310, 312 (S.D.N.Y. 1962). Although substantive New York law will be applied to this motion, because this Court is bound to apply the Federal Rules of Civil Procedure, it is adjudicating Plaintiffs' motion as a motion for summary judgment pursuant to F.R.C.P. 56. See, e.g., Miller v. Steloff, 686 F.Supp. 91, 92 n.1 (S.D.N.Y. 1988).

On September 17, 2012, Defendant submitted an affidavit of its President & CEO Richard Shusterman (the "Shusterman Affidavit" or "Shusterman Aff."), which it relies on as its opposition to Plaintiffs' motion for summary judgment. The motion was fully briefed on

3

September 24, 2012.

## II. Discussion

### A. Failure to Comply with Local Civil Rule 7.1

Local Civil Rule 7.1 of the Rules of the United States District Courts for the Southern and Eastern Districts of New York provides, in relevant part, as follows:

> (a) Except as otherwise permitted by the Court, all motions shall include the following motion papers:
> (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined;
> (3) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.
> (b) Except as otherwise permitted by the Court, all oppositions and replies with respect to motions shall comply with Local Civil Rule 7.1(a)(2) and (3) above.

The Local Civil Rules apply to all civil actions in this Court that are governed by the Federal Rules of Civil Procedure. Local Civil Rule 1.1.

Defendant failed to submit a memorandum of law in opposition to Plaintiffs' motion and instead, relies solely on the Shusterman Affidavit. Submitting an affidavit in place a memorandum of law is insufficient. See Rotblut v. 300 E. 74 St. Owners Corp., No. 96 Civ. 5762 (JSM) (MHD), 1997 WL 16063 at *1 (S.D.N.Y. Jan. 16, 1997). While failure to submit a memorandum of law in accordance with Local Rule 7.1 may constitute sufficient grounds for granting or denying a motion, see, e.g., East 65 Street Realty Corp. v. Rinzler, No. 08 Civ. 6655 (RCC), 2000 WL 303279, at *2 (S.D.N.Y. March 22, 2000), this Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules." Milner v. City of New York, No. 10 Civ. 9384 (JGK) (GWG), 2012 WL 3138110, at *9 (S.D.N.Y. Aug. 2, 2012) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)). Moreover, the Second Circuit has recognized that motions for summary judgment should not be granted on

default: "courts, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company, 373 F.3d 241, 246 (2d Cir. 2004) (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)) (internal quotation marks omitted).

Accordingly, this Court will adjudicate the present motion on its merits.

### B. Plaintiffs' Motion for Summary Judgment

#### 1. Legal Standard

The standard for summary judgment is well-settled. Summary judgment may not be granted unless all of the submissions taken together show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether this burden has been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

Once the moving party has met its initial burden, the burden shifts to the opposing party

to "set forth specific facts showing that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted). In meeting this burden, the opposing party cannot "merely rest on the allegations or denials" contained in its pleadings. Id. Furthermore, it must do more than raise merely "metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-50 (citations omitted). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### 2. Application to Plaintiffs' Motion

"Summary judgment is appropriate on a contract claim under New York law where the intent of the parties can be determined from the face of the agreement." HSH Nordbank AG New York Branch v. Street, 421 F. App'x. 70, 72 (2d Cir. 2011) (quoting Katel Ltd. Liab. Co. v. AT&T Corp., 607 F.3d 60, 64 (2d Cir. 2010)) (internal quotation marks omitted). Under New York law, a plaintiff can make out a *prima facie* case for relief under N.Y. C.P.L.R. § 3213 by presenting an instrument for the payment of money only and claiming nonpayment according to its terms. See Miller, at 93; see also First Interstate Credit Alliance v. Sokol, 179 A.D.2d 583, 584 (1st Dep't 1992) ("Plaintiff established a *prima facie* case by proof of the existence and genuineness of the instrument and the failure to make payments thereunder."). This Court has little difficulty finding that Plaintiffs have met their burden of showing there can be no material factual dispute as to any of these elements, and that they are therefore entitled to judgment as a matter of law.

Plaintiffs have presented undisputed evidence that the Letter Agreements were entered

into between Plaintiffs and Defendants. Each agreement, which obligates Defendant to repurchase health care debt portfolios for a fixed, agreed-upon amount, specifically provides that it "constitutes an instrument for the payment of money for purposes of New York CPLR Section 3213 and any other applicable provision of New York or other federal or state law, rule or regulation." (Genesi Aff. Exh. C at 3; Del Forno Aff. Exh. C at 3; Kovacs Aff. Exh. C at 3.) These agreements unambiguously show that Plaintiffs were entitled to payment from Defendant, and Plaintiffs have averred in affidavits that the full amounts owed to them have not been repaid. Genesi claims that Defendant owes her a remaining $170,000, Del Forno claims it owes a remaining $230,000, and Kovacs claims it owes a remaining $86,000. (Genesi Aff. ¶ 13; Del Forno Aff. ¶ 13; Kovacs Aff. ¶ 13.) Each Letter Agreement sets out a specific repayment schedule and explicitly states that the obligation to repay Plaintiffs is unconditional. Additionally, each agreement contains a provision that "[t]ime is of the essence with respect to the performance by IPI of each of its obligations hereunder." (Genesi Aff. Exh. C at 3; Del Forno Aff. Exh. C at 3; Kovacs Aff. Exh. C at 3.) Each is signed by Richard Shusterman, President & CEO of Defendant IPI. Thus, Plaintiffs have presented sufficient evidence to make a *prima facie* case that Defendant was contractually obligated to pay the amounts set forth in the Letter Agreements and that Defendant has breached its obligations by failing to pay the amounts owed.

Far from raising a genuine issue of material fact, Defendant's opposition in response to Plaintiffs' motion only goes to further support the Court's finding that summary judgment is appropriate in this case. As stated above, instead of submitting a memorandum of law, Defendant relies solely on the cursory Shusterman Affidavit, which is just over one page in length. The assertions in the Shusterman Affidavit are, at best, vague and tangential. It does not dispute, or

address in any detail, the allegations set forth in Plaintiffs' papers. Indeed, the affidavit appears to admit, albeit implicitly, that Defendant owed Plaintiffs a sum of money and that this amount has not been paid. (Shusterman Aff. ¶¶ 5-6.)

It is true that in considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, Defendant's affidavit is so sparse and lacking in relevant facts that summary judgment must be granted in Plaintiffs' favor. In the affidavit, Shusterman affirms that "IPI set aside the amount of $800,000 to repay the individuals who had loaned IPI funds;" that a third-party, Jonathan Rosenberg, "advised IPI to wire the sum of $800,000 to JER Receivables;" that "[i]nstead of distributing the funds to the lenders, Rosenberg advised IPI he/JER would sign a loan document with IPI and used the funds for his own gain;" and that "IPI never received any of the money back from Rosenberg that should have been repaid to the three individuals referenced." (Shusterman Aff. ¶¶ 5-8.)

Drawing all reasonable inferences in Defendant's favor, as required by law, the affidavit suggests that Defendant wired $800,000 to JER on the understanding that JER would distribute the funds to Plaintiffs. According to the affidavit, JER is owned and operated by Rosenberg, whose mother Linda is a "close friend" of Genesi. (Shusterman Aff. ¶ 3.) This is apparently meant to explain why Defendant wired $800,000 that it "set aside . . . to repay the individuals who had loaned IPI funds" to JER upon Rosenberg's request instead of directly to Plaintiffs. (Id. at ¶ 5.) The affidavit describes the arrangement as a "complicated scheme" but does not provide any further detail, and the Letter Agreements do not make any mention of JER.

The Original Agreements between Plaintiffs and Defendant do contain two provisions

8

(Sections 2.3 and 3.5) that refer to JER. JER also signed the Original Agreements as to these two provisions. Section 2.3 of each Original Agreement allows Plaintiffs to elect to assign their rights thereunder to JER (the "JER Election"), and Section 3.5 provides that such an election would be one of Plaintiffs' remedies in case of Defendant's default. Section 3.5 provides that Plaintiffs could also pursue an action against Defendant, and that the two remedies were to be "mutually exclusive." Presumably, the Shusterman Affidavit is thus intended to suggest that Plaintiffs chose the JER Election provided for in Section 2.3 and contemplated as a remedy in Section 3.5, that Defendant repurchased the portfolio at issue for $800,000 from JER, and that Defendant is therefore no longer liable to Plaintiffs.

Each Letter Agreement also contains a provision that "[n]o rights or obligations under this Letter Agreement can be delegated or assigned by IPI without the written consent" of Plaintiff. (Genesi Aff. Exh. C at 3; Del Forno Aff. Exh. C at 3; Kovacs Aff. Exh. C at 3.) This provision thus contemplates that assignment of the rights and obligations under the Letter Agreements is possible, and Defendant may alternatively be arguing that its payment of $800,000 to JER constituted such an assignment of its obligation.

Yet even if all these inferences are drawn from the sparse affidavit, they still do not justify a denial of Plaintiffs' motion for summary judgment. Defendant has offered no evidence nor even argued outright that its payment to JER relieved its legal obligation to Plaintiffs under their respective Letter Agreements. Defendant does not allege that JER explicitly agreed to distribute funds to Plaintiffs nor make any showing that the written consent required for assignment of its obligation under the Letter Agreements was given. Defendant has further failed to demonstrate that Plaintiffs exercised the JER Election provided for in the Original Agreements and that they were therefore no longer the owners of the portfolios at issue.

Defendant's cryptic statements about the $800,000 payment to JER and apparent suggestion that this satisfied its obligation to Plaintiffs raise, at best, only "metaphysical doubt as to the material facts," which is insufficient to defeat summary judgment. Matsushita, at 586.

Defendant has failed to raise a genuine of issue of material fact regarding Plaintiffs' claims under their Letter Agreements. These agreements clearly obligate Defendant to repurchase medical portfolios from Plaintiffs for the amounts set forth in their moving papers, with an aggregate amount of $486,000 still in default. Plaintiffs have each averred in affidavits the amounts under the Letter Agreements are still owed to them, and Defendant has made no showing to the contrary.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED in its entirety. Accordingly, it is hereby:

ORDERED that Plaintiff Jane Genesi shall have judgment in the amount of $170,000, with prejudgment interest calculated by the Clerk of Court at the applicable rate under N.Y. C.P.L.R. § 5004. Prejudgment interest on half of this amount, $85,000, should run from November 30, 2011 (the date of the first default under the Letter Agreements), and prejudgment interest on the remaining amount, $85,000, should run from December 30, 2011 (the date of the second default under the Letter Agreements). Postjudgment interest is to be calculated at the applicable federal rate under 28 U.S.C. § 1961(a).

IT IS FURTHER ORDERED that Plaintiff Raffaella Del Forno shall have judgment in the amount of $230,000, with prejudgment interest calculated by the Clerk of Court at the applicable rate under N.Y. C.P.L.R. § 5004. Prejudgment interest on half of this amount, $115,000, should run from November 30, 2011 (the date of the first default under the Letter

Agreements), and prejudgment interest on the remaining amount, $115,000, should run from December 30, 2011 (the date of the second default under the Letter Agreements). Postjudgment interest is to be calculated at the applicable federal rate under 28 U.S.C. § 1961(a).

IT IS FURTHER ORDERED that Plaintiff Siegfried Kovacs shall have judgment in the amount of $86,000, with prejudgment interest calculated by the Clerk of Court at the applicable rate under N.Y. C.P.L.R. § 5004. Prejudgment interest on half of this amount, $43,000, should run from November 30, 2011 (the date of the first default under the Letter Agreements), and prejudgment interest on the remaining amount, $43,000, should run from December 30, 2011 (the date of the second default under the Letter Agreements). Postjudgment interest is to be calculated at the applicable federal rate under 28 U.S.C. § 1961(a).

The Clerk of Court is directed to enter judgment for Plaintiffs and close the case.

SO ORDERED.

Dated:  November 29, 2012
        New York, New York

Ronnie Abrams
United States District Judge